NOS. 12-02-00255-CR

 12-02-00256-CR

 12-02-00257-CR

 12-02-00258-CR

 12-02-00259-CR

 12-02-00260-CR

 12-02-00261-CR


IN THE COURT OF APPEALS
 


TWELFTH COURT OF APPEALS DISTRICT



TYLER, TEXAS


CLEOTHA WHITAKER, JR.,
§
 APPEAL FROM THE 

APPELLANT


V.
§
 COUNTY COURT AT LAW #1


THE STATE OF TEXAS,

APPELLEE
§
 SMITH COUNTY, TEXAS

 

MEMORANDUM OPINION


 Cleotha Whitaker ("Appellant") appeals multiple convictions for theft by check, a Class B
misdemeanor, for which he was sentenced in each cause to confinement for one hundred eighty days. 
Appellant raises five issues on appeal. We affirm.


Background

 Appellant appeals seven consolidated convictions for theft by check. (1) Appellant pleaded "not
guilty" and the matter proceeded to trial by jury. During trial, various witnesses testified on behalf of
the State. 

 Donald Talley ("Talley") testified that he took a check from Appellant on June 8, 2001 at the
Wal-Mart store on the southeast side of Tyler in Smith County. The check was admitted into evidence. 
Talley wrote the driver's license number on the check of the person who presented the check to him. 
Talley testified that the driver's license number written on the check was the same as Appellant's
driver's license number as set forth on the criminal docket sheet. Talley could not remember what
Appellant purchased or whether there had been additional "cash back."

 Judy Wood ("Wood") testified that she took a check from Appellant on June 10, 2001, at the
Wal-Mart store on the northwest side of Tyler in Smith County. The check was admitted into
evidence. Wood wrote the driver's license number and date of birth on the check of the person who
presented the check to her. Wood identified Appellant as the person who wrote the check that was
returned for insufficient funds. Wood could not remember what Appellant purchased, but testified that
she did remember that Appellant got twenty dollars "cash back."

 Ethel York ("York") described the efforts that Wal-Mart made to contact Appellant and allow
him to cure the bad checks he had written. York testified that Wal-Mart sent Appellant a certified
letter on June 28, 2001, concerning the checks. A copy of the certified letter and receipt therefor was
introduced into evidence at trial.

 Bruce Runyan ("Runyan"), a manager for an Albertson's grocery store located in Tyler, Texas,
testified that three checks, which were each admitted into evidence, were written to both the store he
managed in southeast Tyler and the store in northwest Tyler. Runyan further testified that each check
contained Appellant's name, driver's license number and date of birth. Runyan described how
Albertson's attempted to allow Appellant to cure these bad checks.

 Steve Jenkins ("Jenkins"), a store director for the Super 1 Foods grocery store located on
Gentry Parkway in Tyler, Texas, explained the procedure the store went through to allow Appellant
to cure the two bad checks he negotiated at that store and the Super 1 Foods grocery store located on
North Loop 323 in Tyler. Both of these checks were admitted into evidence. David McCullough, a
manager at the North Loop Super 1 Foods grocery store, testified that the store had negotiated a check
presented by someone identifying himself as Appellant and that the person's name, driver's license
number and date of birth matched Appellant's.

 Shera Duncan ("Duncan"), custodian of records for Southside Bank, testified concerning the
bank's procedures, the use of signature cards and how the bank operates to verify signatures and
account balances. 

 Debbie Van Deman ("Van Deman"), who is the Administrator of the Smith County District
Attorney's Office hot check section, testified about the notice sent to Appellant regarding the checks
at issue by the district attorney's office, Southside Bank and the merchants in question. Van Deman
also testified that no payment was received for any of the checks in question until after criminal
charges were filed against Appellant. Furthermore, Van Deman testified that, considering the
circumstances related to the passing of the checks at issue, it was her opinion that Appellant
intentionally passed the checks, knowing that he did not have funds available to cover them. Van
Deman also testified regarding the question of consent to Appellant's conduct, stating that the person
who passed the checks in question did not have the money to cover them and used each check as a tool
to defraud the owner of the property.


Evidentiary Sufficiency

 In issues one, two, three and four, Appellant contends that the evidence is not legally or
factually sufficient to support the jury's verdict. 

Legal Sufficiency

 Legal sufficiency is the constitutional minimum required by the Due Process Clause of the
Fourteenth Amendment to sustain a criminal conviction. See Jackson v. Virginia, 443 U.S. 307, 315-16, 99 S. Ct. 2781, 2786-787, 61 L. Ed. 2d 560 (1979); see also Escobedo v. State, 6 S.W.3d 1, 6 (Tex.
App.-San Antonio 1999, no pet.). The standard for reviewing a legal sufficiency challenge is whether
any rational trier of fact could have found the essential elements of the offense beyond a reasonable
doubt. See Jackson, 443 U.S. at 320, 99 S. Ct. at 2789; see also Johnson v. State, 871 S.W.2d 183,
186 (Tex. Crim. App. 1993). The evidence is examined in the light most favorable to the jury's
verdict. See Jackson, 443 U.S. at 320, 99 S. Ct. at 2789; Johnson, 871 S.W.2d at 186. A successful
legal sufficiency challenge will result in rendition of an acquittal by the reviewing court. See Tibbs
v. Florida, 457 U.S. 31, 41-42, 102 S. Ct. 2211, 2217-218, 72 L. Ed. 2d 652 (1982).

 The sufficiency of the evidence is measured against the offense as defined by a hypothetically
correct jury charge. See Malik v. State, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). Such a charge
would include one that "accurately sets out the law, is authorized by the indictment, does not
unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of
liability, and adequately describes the particular offense for which the defendant is tried. Id. 

 In the instant case, in order to meet its burden of proof, the State was required to prove that 
Appellant unlawfully appropriated property with the intent to deprive the owner of that property. See
Tex. Pen. Code Ann. § 31.03 (Vernon 2003). Section 31.06 provides the steps necessary to establish
a presumption of intent to commit the offense of theft by check. (2) See Tex. Pen. Code Ann. § 31.06
(Vernon 2003); Gueder v. State, 76 S.W.3d 133, 136 (Tex. App.-Houston [14th Dist.] 2002, no pet.). 

 The State was required to prove that Appellant obtained property (3) by passing a check when he
did not have sufficient funds on deposit with the bank or other drawee for the payment in full of the
check as well as all other checks or orders then outstanding. See id. The word "property" includes
money. See Tex. Pen. Code Ann. § 31.01(5)(c) (Vernon 2003). Authentication of handwriting may
be established by a comparison performed either by experts or by the jury. Tex. Code Crim. Proc.
Ann. art. 38.27 (Vernon 1979). Proof by comparison to other writing samples is sufficient when an
appellant fails to contest under oath the authenticity of his signature when the document is signed. Id.;
Camacho v. State, 765 S.W.2d 431, 434 (Tex. Crim. App. 1989); Ex parte Watson, 606 S.W.2d 902,
905 (Tex. Crim. App. 1980). 

 Here, the record reflects that Appellant filed a pro se motion for postponement with the court,
which contained his signature, a certified copy of which was introduced into evidence by the State. (4) 
Appellant did not contest the validity of his signature under oath, see Tex. Code Crim. Proc. Ann.
art. 38.27 (Vernon 1979), and thus, the authentication of Appellant's signature on the various checks
could be established by a comparison made by the jury to Appellant's signature on his motion for
postponement as well as the papers used to open the account at Southside Bank. The record further
reflects that Appellant had a bank account, that checks were passed on that account, and that sufficient
funds were not available to cover all of these checks. The record also reflects that the driver's license
number written on each of the checks by the people who accepted the checks matched Appellant's
driver's license number on the criminal docket sheet. Moreover, each of the checks in question was
returned for lack of sufficient funds. Further still, Van Deman testified about the notice sent to
Appellant regarding the checks at issue by the district attorney's office, Southside Bank and the
merchants in question. Van Deman also testified that no payment was received for any of the checks
in question until after criminal charges were filed against Appellant and that it was her opinion,
considering the circumstances related to the passing of the checks at issue, that Appellant intentionally
passed the checks with knowledge that he did not have funds available to cover them. Moreover, Van
Deman testified with regard to the possibility that the owners of the property in question may have
consented to Appellant's conduct, stating that the person who passed the checks in question did not
have the money to cover them and used each check as a tool to defraud the owner of the property. (5)

 With regard to the value of the property, Appellant argues that the evidence fails to establish
that the value of the property comports with the amount alleged in the information. The thrust of
Appellant's argument appears to be that the State did not specifically plead the type of merchandise
in the information and the evidence reflects that, in many instances, Appellant received "cash back"
for the checks in addition to store merchandise. We iterate that the word "property" includes money. 
See Tex. Pen. Code Ann. § 31.01(5)(c) (Vernon 2003). Furthermore, in a prosecution for theft by
check, the evidence is sufficient where the record reflects that the appellant received groceries or other
grocery store items and cash and gives the value of the items and cash that he obtained by setting forth
the amount of the checks that were presented. See Warren v. State, 91 S.W.3d 890, 897 (Tex.
App.-Fort Worth 2002, no pet.). In the instant case, each information by which Appellant was charged
alleged that the value of the merchandise taken by Appellant was between twenty and five hundred
dollars. (6) Our review of the record indicates that the amount of the checks that were presented in each
instance comports with the allegations in the corresponding information. 

Factual Sufficiency

 Turning to Appellant's contention that the evidence is factually insufficient to support the
jury's verdict, we must first assume that the evidence is legally sufficient under the Jackson standard. 
See Clewis v. State, 922 S.W.2d 126, 134 (Tex. Crim. App. 1996). We then consider all of the
evidence in the record related to Appellant's sufficiency challenge, not just the evidence which
supports the verdict. We review the evidence weighed by the jury which tends to prove the existence
of the elemental fact in dispute, and compare it to the evidence which tends to disprove that fact. 
Santellan v. State, 939 S.W.2d 155, 164 (Tex. Crim. App. 1997). We are authorized to disagree with
the jury's determination, even if probative evidence exists which supports the verdict. Clewis, 922
S.W.2d at 133. Our evaluation should not substantially intrude upon the jury's role as the sole judge
of the weight and credibility of witness testimony. Santellan, 939 S.W.2d at 164. Where there is
conflicting evidence, the jury's verdict on such matters is generally regarded as conclusive. See Van
Zandt v. State, 932 S.W.2d 88, 96 (Tex. App.-El Paso 1996, pet. ref'd). Ultimately, we must ask
whether a neutral review of all the evidence, both for and against the finding, demonstrates that the
proof of guilt is so obviously weak as to undermine our confidence in the jury's determination, or the
proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof. Johnson v.
State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). A verdict will be set aside "only if the evidence
supporting guilt is so obviously weak, or the contrary evidence so overwhelmingly outweighs the
supporting evidence, as to render the conviction clearly wrong and manifestly unjust." Ortiz v. State,
93 S.W.3d 79, 87 (Tex. Crim. App. 2002). 

 Our review of the record in the instant case, with consideration given to all of the evidence,
both for and against the jury's finding, has not revealed to us any evidence that causes us to conclude
that the proof of guilt is so obviously weak or is otherwise so greatly outweighed by contrary proof so
as to render Appellant's conviction clearly wrong or manifestly unjust. Therefore, we hold that the
evidence is both legally and factually sufficient to support the jury's verdict. Accord Whitaker v.
State, No. 12-02-142-CR, 2003 WL 21402386, *1-4 (Tex. App.-Tyler June 18, 2003, no pet. h.) (not
designated for publication) (a related case in which Appellant was also convicted of theft by check,
in which we held that the evidence was sufficient to support the jury's verdict). Appellant's issues
one, two, three and four are overruled.


Lesser-Included Offense

 In his fifth issue, Appellant contends that the trial court erred by not charging the jury with the
lesser-included offense of "Class C theft." In criminal cases, requests and objections to the court's
charge are governed by the exclusive requirements of article 36.14 of the code of criminal procedure. 
Tex. Code Crim. Proc. Ann. art. 36.14 (Vernon Supp. 2003). Article 36.14 requires that requests
and objections to the court's charge be in writing, but that requirement is met by an objection or request
dictated into the record. Id. With regard to the necessary specificity of the request or objection, the
court of criminal appeals has instructed that "the objection must be specific and clear enough to
apprise the trial court of the nature of the objection." Pennington v. State, 697 S.W.2d 387, 390 (Tex.
Crim. App. 1985). In the instant case, during the charge conference, the following exchange occurred:

 THE COURT: Gentlemen, have each of you had an opportunity to read the charge?


 . . . .


 APPELLANT'S COUNSEL: Your Honor, I'm not going to be as picky on the typos. I did spot the ones that 

 are circled, but I'm assuming those will be corrected. Defense would request a lesser-included instruction, 

 based on testimony that came out in trial that would have basically proven up a lesser included offense.


 THE COURT: Okay.


 APPELLANT'S COUNSEL: That's all. 


 THE COURT: That request will be denied.



Appellant's request was not specific and clear enough to apprise the trial court of the nature of the
objection because Appellant did not state the name of the offense he wished to have included. We will
not presume that the trial court was aware of the specific offense to which Appellant intended to refer
and cannot overlook the possibility that Appellant, at that time, intended the inclusion of an offense
other than "Class C theft." 

 Furthermore, even if we were to assume arguendo that Appellant's request was sufficiently
specific to inform the trial court that Appellant wished to charge the jury on Class C theft, the outcome
would not change. As before, the thrust of Appellant's argument is that the State did not specifically
plead the type of "merchandise" in the information and that the evidence reflects that, in many
instances, Appellant received "cash back" for the checks. Thus, Appellant argues, the jury could
reasonably conclude that, if Appellant received "cash back," the value of the "merchandise" may have
been less than twenty dollars. In determining whether a charge on a lesser-included offense is
required, there must be some evidence in the record that if the defendant is guilty, he is not guilty of
the alleged offense but is guilty only of the lesser-included offense. See Salinas v. State, 644 S.W.2d
744, 745 (Tex. Crim. App. 1983). 

 A person commits the offense of theft, a Class C misdemeanor, if he unlawfully appropriates
property with intent to deprive the owner of property, the value of the property stolen is less than
twenty dollars and the defendant obtained the property by issuing or passing a check. See Tex. Pen.
Code Ann. § 31.03(a), (e)(1)(B) (Vernon 2003). (7) The word "property" includes money. See Tex.
Pen. Code § 31.01(5)(C). Thus, the value of the property taken, whether or not "cash back" was
received, was evidenced by the amount of the checks that were presented. See Warren, 91 S.W.3d
at 897. As such, there was no evidence that if Appellant was guilty he was guilty only of the lesser-included offense. See Salinas, 644 S.W.2d at 745 (emphasis added). We hold that the trial court did
not err in denying Appellant's request for a lesser-included offense. Appellant's fifth issue is
overruled.


Conclusion 

 Having overruled each of Appellant's issues, we affirm the judgment of the trial court.


 SAM GRIFFITH 

 Justice



Opinion delivered July 9, 2003.

Panel consisted of Worthen, C.J., and Griffith, J.





(DO NOT PUBLISH)
1. See Tex. Pen. Code Ann. §§ 31.03, 31.06 (Vernon Supp. 2003); Richie v. State, 721 S.W.2d 560, 562
(Tex. App.-Beaumont 1986, no pet.). Appellant was charged by separate information for each offense.
2. Section 31.06 does not separately create a specific offense. See Richie, 721 S.W.2d at 562. It merely
provides an evidentiary presumption of intent to deprive which is ancillary to the general theft statute, and codifies a
presumption upon which the State may rely in appropriate cases. Id.
3. The word "merchandise" in the court's charge unnecessarily increases the State's burden of proof and
would, therefore, not appear in the hypothetically correct jury charge. See Malik, 953 S.W.2d at 240; see also
Gollihar v. State, 46 S.W.3d 243, 252-53 (Tex. Crim. App. 2001).
4. See Tex. R. Evid. 902(4).
5. See Tex. Pen. Code. Ann. § 31.01(3)(A) (Vernon 2003) (consent is not effective if induced by
deception).
6. In one information, two instances of theft by check are alleged, with the value of the property alleged at
$11.18 and $10.96 respectively. The information further alleges that "all of said amounts were obtained pursuant to
one scheme and continuing course of conduct, and the aggregate amount of such amounts stolen was at least" twenty
dollars but less than five hundred dollars.
7. See n. 3. The word "merchandise" would likewise not appear in a hypothetically correct jury charge for
Class C theft in that such an inclusion would unnecessarily increase the State's burden of proof. See Malik, 953
S.W.2d at 240.